UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

**LUIS BARRAZA,**

  **Plaintiff,**

**vs.**                **No. 15 CV 832 JAP/GBW**

**JOHN M. MCHUGH, Secretary
Department of the Army,**

  **Defendant.**

**MEMORANDUM OPINION AND ORDER
GRANTING MOTION TO DISMISS**

  Defendant John M. McHugh, Secretary Department of the Army (Defendant), asks the Court to dismiss this case for lack of subject matter jurisdiction and for failure to state a claim. *See* MOTION TO DISMISS AND MEMORANDUM IN SUPPORT (Doc. No. 10) (Motion). Because Plaintiff Luis Barraza (Plaintiff) failed to exhaust administrative remedies related to his discrimination claims and because the Court lacks subject matter jurisdiction over Plaintiff's claim to enforce the parties' settlement agreement, the Court will grant the Motion.[1]

 I. STANDARD OF REVIEW

  Rule 12(b)(1) authorizes a court to dismiss claims for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The party seeking to invoke a federal court's jurisdiction has the burden to establish subject matter jurisdiction. *Devon Energy Production Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1201 (10th Cir. 2012). In reviewing a facial attack on a complaint for lack of jurisdiction, the court must accept the plaintiff's allegations as true. *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001) (citing *Riggs v. City of Albuquerque,*

---

[1] In ruling on the Motion, the Court has also carefully considered all arguments asserted in PLAINTIFF'S RESPONSE TO MOTION TO DISMISS AND MEMORANDUM IN SUPPORT (Doc. No. 15) and in the REPLY IN SUPPORT OF MOTION TO DISMISS (Doc. No. 16).

916 F.2d 582, 584 (10th Cir. 1990)). Subject matter jurisdiction in this case stems from specific statutory remedies available to federal employees who assert claims against their employers for discrimination on the basis of race, sex, national origin, or religion. 42 U.S.C. § 2000e-16(a). Section 2000e-16(c) authorizes a federal employee to file suit in federal court, but the employee must exhaust his administrative remedies before filing. 42 U.S.C. § 2000e-16(c). An employee must exhaust his claims through the specified complaint process defined in the regulations promulgated by the Equal Employment Opportunity Commission. *See* 29 C.F.R. Part 1614. While a motion under Rule 12(b)(6) challenges only the sufficiency of the complaint, . . . a motion under Rule 12(b)(1) "may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends," *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1295 (10th Cir. 2003) (quoting, *Holt v. United* States, 46 F.3d 1000, 1003 (10th Cir. 1995)). When a party challenges the allegations supporting subject-matter jurisdiction, the "court has wide discretion to allow affidavits [or] other documents, . . . to resolve disputed jurisdictional facts." *Davis*, 343 F.3d at 1296 (quoting *Holt*, 46 F.3d at 1003). "In such instances, a court's reference to evidence outside the pleadings does not convert the motion [to dismiss] to a Rule 56 motion [for summary judgment]." *Id.*

## II.  BACKGROUND

Plaintiff is employed as an IT Specialist by the Department of the Army. (Compl. (Doc. No. 1) ¶ 13.) On September 21, 2015, Plaintiff filed the COMPLAINT (Doc. No. 1) (Complaint) against Defendant for violations of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e, et seq. (Title VII); the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, et seq. (the ADEA); and the Rehabilitation Act of 1992, Pub. L. No. 102-59 (Oct. 29, 1992) (the RA). (Compl. ¶ 1.) Plaintiff claims he was

discriminated against and subject to retaliation and a hostile work environment on the basis of his age and disability. (*Id.* ¶¶ 2, 9.) Plaintiff seeks declaratory relief, injunctive relief, and compensatory damages. (*Id.* ¶ 4.) Plaintiff is over 40 years old and resides in El Paso, Texas.[2]

At all pertinent times, Plaintiff was employed as an Information Technician (IT) Specialist. (*Id.* ¶ 13.) Mr. Allan Crooks, Supervisory Logistics Management Specialist (Chief), is Plaintiff's first level supervisor. (*Id.*) Ms. Mildred A. Mumfrey, Logistics Management Officer (Director), is Plaintiff's second level supervisor. (*Id.*) In March and June 2005, Plaintiff was diagnosed with Post Traumatic Stress Disorder (PTSD) and seizures. (*Id.* ¶ 13.) In 2006, Plaintiff was diagnosed with skin discoloration. (*Id.*) Plaintiff takes multiple medications for these conditions. (*Id.*) However, Plaintiffs conditions do not "limit any major life activity." (*Id.* ¶ 15.)

Mr. Ismael Cardenas, Installation Property Book Officer for the Logistics Readiness Center, is not in Plaintiff's supervisory chain of command. (*Id.*) Plaintiff alleges that Mr. Cardenas "singled him out by using abusive profanity and negative behavior towards him." (*Id.* ¶ 16.)

When IT equipment is transferred from one employee to another, a "hand receipt" is generated. (*Id.* ¶ 16.) The acquiring employee gets a copy of the hand receipt, and the transferring employee turns in his or her hand receipt to the Property Book Office at White Sands Missile Range Logistics Readiness Center (the PB Office). (*Id.*) The PB Office processes the change. (*Id.*)

In October 2011, Plaintiff performed an examination of inventory possessed by Mr. Chris Martinez. (*Id.* ¶ 17.) Some of Mr. Martinez's equipment could not be located. (*Id.*) Plaintiff

---

[2] Venue is proper in this Court because Plaintiff works for the Department of Homeland Security in Santa Teresa, New Mexico.

alleges that Mr. Cardenas called Plaintiff a "pussy" because Plaintiff would not sign off on Mr. Martinez's DA Form 3161. (*Id.*)

In February 2012, Mr. Cardenas and Plaintiff conducted an inventory of "SAMS-1E equipment." (*Id.*) Mr. Cardenas was supposed to "immediately transfer seven laptops which totaled over $40,000 to [Plaintiff's] hand receipt and forward to him the DA Form 3161." (*Id.*) However, Mr. Cardenas did not transfer the SAMS-1E equipment to Plaintiff until 18 months after the inventory was performed, which is allegedly a violation of Army regulations. (*Id.*)

In January 2013, Plaintiff advised Mr. Cardenas the equipment issued sometime in 2011 to the dining facility 2nd Engineer Battalion was still on Plaintiff's hand receipt. (*Id.* ¶ 18.) On May 28, 2013, Plaintiff received a negative email from Mr. Wayne Rossman, Supervisory Logistics Management Specialist, indicating that Plaintiff "was delinquent in not signing his annual hand receipt." (*Id.* ¶ 19.) Plaintiff explained to Mr. Rossman that he did not sign his hand receipt because he had not received the laptops or the SAMS-1E equipment from Mr. Cardenas. (*Id.*) On the same day, Mr. Crooks called a meeting attended by Plaintiff, Mr. Cardenas, and Mr. Cardenas' acting supervisor, Mr. James Gallegos, to address the hand receipt issues. (*Id.*) During the meeting, Mr. Cardenas cursed at Plaintiff using the "F word." (*Id.*) Plaintiff stated that Mr. Cardenas was "acting like a little girl, did not know what he was doing and it was taking too long in processing his DA Form 3161." (*Id.*) Both Plaintiff and Mr. Cardenas stood up, but Mr. Gallegos "got between them to diffuse the problem." (*Id.*) Mr. Crooks asked Mr. Cardenas to apologize, and Mr. Cardenas complied. (*Id.*) Plaintiff refused Mr. Crooks' suggestion to shake hands with Mr. Cardenas, because Plaintiff "believed his apology was phony." (*Id.*)

On May 31, 2013, Plaintiff forwarded a memorandum to Mr. Crooks stating that Plaintiff "would not tolerate Mr. Cardenas [sic] bulldog and gangster-type manner." (*Id.* ¶ 20.) On

September 6, 2013, Plaintiff "complained through Mr. Jimmy Ray to Ms. Mumfrey concerning Mr. Cardenas' deceptive techniques and unprofessional conduct towards him." (*Id.* ¶ 21.)

On September 18, 2013, Ms. Mumfrey, at a meeting with Plaintiff, Mr. Ray, Mr. Cardenas, and Mr. Ruperto Balderrama, asked Plaintiff "when he would be signing his hand receipt." (*Id.*)

On or about September 26, 2013, Mr. Crooks came to Plaintiff's office and told Plaintiff to "disregard the incidents between Mr. Cardenas." (*Id.* ¶ 23.) Plaintiff became angry and "slammed his left palm on the desk, because he felt Mr. Crooks had lied to him." (*Id.*)

In October 2013, Plaintiff advised Ms. Mumfrey that he filed a complaint against Mr. Cardenas and "highly recommended they have no contact." (*Id.* ¶ 24.) Plaintiff believes that Mr. Cardenas "yelled at him because of his age and possibly perceived him as having an impairment (disability)" since Mr. Cardenas "has not harassed/treated the other hand receipt holders like he did [Plaintiff]." (*Id.* ¶ 24.)

On December 9, 2013, Plaintiff filed a complaint with the EEOC alleging age and disability discrimination. (*Id.* ¶ 12.) On September 14, 2014, Plaintiff and the Department of the Army, White Sands Missile Range (the Agency) entered into a NEGOTIATED SETTLEMENT AGREEMENT (NSA) (*Id.* Ex. 2.)

The NSA contains the following provision:

> The current working relationship between the complainant [Plaintiff] and Ismael Cardenas will remain in effect for one (1) year from the execution of this NSA. During this timeframe, the complainant will continue to conduct hand-receipt business with the Property Book Office at WSMR/LRC through the employees under the Property Book Officer's (PBO) supervision. *All communication relating to hand-receipt business will be handled either through the employees supervised by the PBO, the PBO's supervisor, or the complainant's supervisor.* At the conclusion of the year, the complainant may submit a request to the LRC Director to continue the aforementioned arrangement. The request will be reviewed and then decided upon by

5

>  the LRC Director based upon manpower and other management considerations and an answer will be provided to the complainant. . . .

(*Id.* ¶ 25; Mot. Ex. 2.) (emphasis added). Plaintiff alleges that the goal of this provision was to avoid all contact between Plaintiff and Mr. Cardenas. (*Id.* ¶ 26.) The NSA also contains the following language:

> An executed (signed) copy of this NSA will serve as a complete withdrawal and dismissal, with prejudice, by the complainant [Plaintiff] of the above-captioned complaint of discrimination identified as EEOC No. 451-2014-00204X and Agency Case No. ARWSMR13OCT03727.
>
> . . .
>
> [Plaintiff] waiv[es] his right to pursue any administrative claims before the Equal Employment Opportunity Commission (EEOC), Merit Systems Protection Board (MSPB), as well as any judicial action in any other forum, including federal or state court, including, but not limited to, civil suits for damages, concerning the matters raised in the above-referenced complaint, and that they will not be made the subject of future litigation.

(Mot. Ex. 2 at 2–4.) However, if Plaintiff came to believe that his employer, the Department of the Army, White Sands Missile Range (the Agency) breached the agreement, he was permitted to advise the Agency in writing of the alleged breach. (*Id.* at 9.) After notifying the Agency, Plaintiff could choose one of two options.

> The [Plaintiff] may request that the terms of the [NSA] be specifically implemented or, alternatively, the complaint be reinstated for further proceeding from the point at which processing ceased.

(*Id.* at 10.)

In November 2014, Plaintiff sent an email requesting to meet with Ms. Soledad "Lita" Sanchez on November 24, 2014, to sign Plaintiff's "HR inventory." (*Id.* ¶ 27.) Ms. Sanchez responded to Plaintiff by email stating that she would be out of the office on that date, but the document could be signed digitally or in person on November 25, 2014. Ms. Sanchez courtesy

copied John Weaver, Mr. Crooks, and Mr. Cardenas on the response email to Plaintiff. (*Id.*) Mr. Cardenas sent the following email using the "reply to all" option:

> Lita,
> Mr. Barraza is not due until the month of December. Please do not have him sign until after you send out the inventories for December to ensure Mr. Barraza has time to inventory his equipment based off of the most current hand receipt.
> All,
> I apologize for the confusion. Please let me know if there are any questions.

(*Id.* ¶ 28.)

On December 15, 2014, Plaintiff sent a "Memorandum" to the EEO/Civil Rights Office (Deputy for EEO Compliance and Complaints Review (EEOCCR)), ATTN: SAMR-EO-CCR, alleging that by sending this email, Mr. Cardenas "knowingly, deliberately, and intentionally violated the contract [NSA] therefore, he totally disrespected not only the NSA but, all parties whose signature [sic] are on the contract." (Mot. Ex. 4 at 1.) Plaintiff requested that "management issue letters of reprimand to the Supervisor and the Director, and that a $100,000 fine be imposed and paid to [Plaintiff]." (*Id.* at 3.) Significantly, Plaintiff's Memorandum did not contain a request that the EEOCCR reinstate his original December 9, 2013 complaint of discrimination. (*Id.*)

On January 16, 2015, the EEOCCR issued a Final Decision concluding that "to date, management is in full compliance with the terms of the NSA, . . . a breach of contract has not occurred. Accordingly, the Complainant's NSA noncompliance allegation has not been substantiated and no remedial relief is warranted." (Resp. Ex. 1 at 5.) The Final Decision also stated that Plaintiff "may file a Notice of Appeal with the Equal Employment Opportunity Commission (EEOC or Commission), Office of Federal Operations, . . . no later than thirty (30) calendar days from receipt of this Final Agency Decision." (*Id.*) Plaintiff appealed the Final Decision. (*Id.*)

On June 24, 2015, the U.S. Equal Employment Opportunity Commission, Office of Federal Operations (EEOC Federal) affirmed the EEOCCR's Final Decision. (Mot. Ex. 3 at 3.) The following language appears at the end of the EEOC's Decision: "[y]ou have the right to file a civil action in an appropriate United States District Court within ninety (90) calendar days from the date that you receive this decision." (*Id.* at 4.)

On September 21, 2015, Plaintiff filed the Complaint in this Court asserting five counts. In Count One of the Complaint, Plaintiff alleged that Defendant violated the ADEA by discriminating against Plaintiff on the basis of age "in the creation and condemnation [sic] of an age bias which changed the terms and conditions of his employment." Plaintiff further alleged that he was "held to stricter standards of performance, and denied benefits of employment accorded other employees." (Compl. ¶¶ 30–35.)

In Count Two, Plaintiff alleged that "the actions of Defendant, constituted disability discrimination against Plaintiff in the creation and condonation [sic] of a disability bias and a hostile work environment" in violation of the RA. (*Id.* ¶ 37–38.) Plaintiff alleged that he was "harassed, held to stricter standards of performance, and denied benefits of employment accorded other employees." (*Id.* ¶ 39.)

In Count Three, Plaintiff asserted that Defendant retaliated against him in violation of the ADEA and Title VII whereby Plaintiff "suffered adverse employment consequences as a direct result of his participation or assistance in prior EEOC process." (*Id.* ¶ 43.)

In Count Four, Plaintiff contended that Defendant created and condoned "a hostile work atmosphere which changed the terms and conditions of his employment. . . . because of Plaintiff's race/national origin, sex, age and prior EEO activity, and made the work environment one that a reasonable person could not endure without injury." (*Id.* ¶¶ 45–47.) Plaintiff further

8

alleged that Defendant "discriminated against Plaintiff herein as a male with respect to the terms, conditions, privileges, advantages and benefits of his employment with Defendant." (*Id.* ¶ 48.)

In Count Five, Plaintiff asserted a claim for breach of the NSA. (*Id.* ¶¶ 51–59.) Plaintiff alleged that "Plaintiff received an email, sent by Mr. Cardenas, who 'knowingly, deliberately, and internationally [sic]' violated the terms of the NSA." (*Id.* ¶ 52.)  Plaintiff also alleged that Defendant breached the NSA "by allowing Mr. Cardenas to have contact with Plaintiff." (*Id.* ¶ 54.)

Plaintiff requested 1) a declaratory judgment that Defendant's acts were in violation of Title VII and the ADEA, 2) compensatory damages for each violation, for Plaintiff's pain, suffering, emotional distress, humiliation and for any resulting physical and emotional damages, in the amount of $300,000.00[.]" (*Id.*) Plaintiff also requested attorney's fees, costs, and interest. (*Id.*)

III.   DISCUSSION

    A.   Plaintiff failed to exhaust administrative remedies.

Defendant argues that Plaintiff's first four claims under Title VII, the RA, and the ADEA may not proceed in this Court because Plaintiff failed to exhaust his administrative remedies under the applicable regulatory framework related to federal employees. Defendant also asserts that Plaintiff may not assert his Count Five claim for breach of the NSA because federal courts do not have jurisdiction to enforce these types of settlement agreements.

The process followed by federal employees is found in 29 C.F.R. Part 1614. First, within 45 days of the alleged discriminatory act, an aggrieved federal employee must consult with an EEO counselor from the "employing agency"—here the Army. 29 C.F.R. § 1614.105. If his claims are not resolved, the employee may file a formal complaint of discrimination with the

employing agency. 29 C.F.E. § 1614.106. The employee must sign the complaint or statement describing his claims. *Id.* Only claims raised in pre-complaint counseling may be raised in a formal complaint. 29 C.F.R. § 1614.105(b).

Once the employee's complaint is accepted, the employing agency has 180 days to conduct an investigation and produce a record. 29 C.F.R. § 108(f). The employee may request a hearing before an administrative law judge. 29 C.F.R. § 1614(h). The employing agency must issue a final decision within 60 days of the employee's request for decision without a hearing, or within 60 days of the recommended decision from the administrative law judge. 29 C.F.R. § 1614.110. If the employee is unsatisfied with the agency's decision, the employee may sue in federal district court under the applicable statute governing discrimination (Title VII, 42 U.S.C. § 2000e, et seq., the ADEA, and the RA). In this case, Plaintiff and Defendant availed themselves of the provisions regarding settlement of discrimination complaints provided in 29 C.F.R. § 1614.

Under the regulations, federal agencies are required to "[e]stablish or make available an alternative dispute resolution program . . . for both the pre-complaint process and the formal complaint process." 29 C.F.R. § 1614.102(b)(2). If an employee files a formal complaint, "[a]gencies are encouraged to incorporate alternative dispute resolution techniques into their investigative efforts in order to promote early resolution of complaints." 29 C.F.R. § 1614.108(b). The goal of alternative dispute resolution is a satisfactory outcome usually codified in a settlement agreement between the employee and the employing agency.

"Any settlement agreement knowingly and voluntarily agreed to by the parties, reached at any stage of the complaint process," is binding on the parties. 29 C.F.R. § 1614.504(a). If the employee believes a settlement agreement has been breached, "he must notify the EEO director

in writing." *Id.* At that point, the employee may "request that the terms of the settlement agreement be specifically implemented or, alternatively, that the complaint be reinstated for further processing from the point processing ceased." *Id.* The employing agency must respond to the employee's notification in writing, and if the employee is unsatisfied with the response, he may appeal to the EEOC. 29 C.F.R. § 1614.504(b). If the EEOC determines that the employing agency is not in compliance with the settlement agreement and that the employee is not responsible for that noncompliance, the EEOC "may order such compliance with the . . . settlement agreement, or, alternatively, for a settlement agreement, it may order that the complaint be reinstated for further processing from the point processing ceased." 29 C.F.R. § 1614.504(c).

Under this framework a federal employee who enters into a settlement agreement with his employer has two choices when he believes that the employer breached the settlement agreement. The employee may request specific performance of the settlement agreement, or the employee may request that his original complaint be adjudicated from the time the administrative process was halted for settlement.

In this case, Plaintiff's formal complaint of discrimination filed with the Department of the Army was resolved by the NSA. In other words, the execution of the NSA halted the administrative process associated with Plaintiff's formal complaint of discrimination. When Plaintiff perceived that the NSA was breached, Plaintiff could ask to reinstate his formal complaint of discrimination, or he could request that the terms of the NSA be specifically implemented. In Plaintiff's December 17, 2014 Memorandum, he alleged that the NSA was breached and Plaintiff asked for letters of reprimand, that his employer be fined $100,000, and

11

that the fine be awarded to him. In his December 17, 2014 Memorandum, Plaintiff did not request reinstatement of his original formal complaint of discrimination.

After describing his efforts to enforce the NSA, Plaintiff maintains that he exhausted all administrative remedies prior to filing his Complaint. Plaintiff essentially argues that the administrative process was reinstated when he filed his written notification in December 2014, which led to the January 16, 2015 Final Decision by the EEOCCR and eventually to the June 24, 2015 Decision by the EEOC Federal affirming the finding that the NSA was not breached. Plaintiff points to the language at the end of the June 24, 2015 Decision regarding Plaintiff's right to "file a civil action in the appropriate United States District Court" within ninety days. Plaintiff contends that by timely filing of the Complaint on September 21, 2015, he exhausted all administrative remedies prior to filing the Complaint.

However, Plaintiff fails to recognize that it is the regulatory framework, not the language in the June 24, 2015 Decision, which governs his right to assert his original discrimination claims. As clearly spelled out in the NSA, when Plaintiff executed the NSA he withdrew and dismissed his discrimination claims, released his employer from liability related to his discrimination claims, and waived his right to "any judicial action in any other forum, including federal and state court" for redress. Once Plaintiff determined that the NSA may have been breached, he had to request reinstatement of his claims to restart the administrative process. *See* 29 C.F.R. § 1614.504(a).  By requesting a ruling on breach of the NSA and not requesting that his original claims be reinstated, Plaintiff failed to meet the regulatory exhaustion requirement outlined in § 1614.504(a).

In *Lindstrom v. United States*, the Tenth Circuit addressed this issue. 510 F.3d 1191, 1194 (10th Cir. 2007). Mr. Lindstrom, an employee of the United States Department of the

Interior (the Department), filed an administrative complaint alleging discrimination based on disability. *Id.* at 1192. Mr. Lindstrom and the Department reached a settlement agreement. *Id.* After several months, Mr. Lindstrom believed that the Department breached the settlement agreement by failing to transfer him to another position. *Id.* Mr. Lindstrom sought review by the Department's EEO Director and received a decision letter stating that the Department did not breach the settlement agreement. *Id.* Mr. Lindstrom then appealed that decision to the EEOC, which upheld the Department's determination. *Id.* Mr. Lindstrom filed a complaint in federal district court seeking a transfer to a different position, compensatory damages, and costs and attorney's fees. *Id.* The district court dismissed Mr. Lindstrom's claims for lack of subject matter jurisdiction: "the suit 'is not a civil action claiming disability discrimination under the Rehabilitation Act and Title VII; rather, it is an action for breach of a settlement agreement that resolved a discrimination claim. For that reason, it is not "brought under" Title VII and the Rehabilitation Act and this Court does not have jurisdiction.'" *Id.* at 1193. The Tenth Circuit affirmed the dismissal concluding that 29 C.F.R. § 1614.504(a) did not permit Mr. Lindstrom to sue in federal court to enforce his settlement agreement. In addition, the Tenth Circuit concluded that since Mr. Lindstrom did not request reinstatement of his original discrimination complaint, he could not assert the underlying discrimination claims in federal court. *Id.* at 1194.

In the *Lindstrom* decision, the Tenth Circuit cited *Frahm v. United States*, a case in which the Fourth Circuit arrived at the same conclusion. 492 F.3d 258, 262 (4th Cir. 2007). In that case, a former employee of the Internal Revenue Service (IRS) sued to enforce a settlement agreement she reached with the IRS concerning her Title VII claim. *Id.* at 260. The Fourth Circuit held that "neither the settlement agreement nor a statute allow Miss Frahm to sue the government for breach of the settlement agreement." *Id.* at 262. Thus, the court upheld the dismissal of Miss

13

Frahm's suit. *Id.* The Fourth Circuit noted that 29 C.F.R. § 1614.504(a) "permits a federal employee-complainant to elect one of two options-either request specific performance or reinstatement of the complaint-and that no other options are available." *Id.* at 263. Congress did not allow the federal government to be sued by federal employees to enforce settlement agreements reached as a result of Title VII discrimination claims; and thus, a district court does not have subject matter jurisdiction over the suit. *Id.* at 262–63.

Both *Lindstrom* and *Frahm* instruct this Court that it lacks jurisdiction over Plaintiff's claims. First, in Counts One through Four, Plaintiff attempts to assert the underlying discrimination claims under the ADEA, the RA, and Title VII. However, when Plaintiff entered into the NSA, he halted the administrative process for those claims. The only way Plaintiff could exhaust the administrative process as to those claims was for Plaintiff to request reinstatement of his original claims. 29 C.F.R. § 1614.504(a). Plaintiff did not request reinstatement. Hence, the Court must dismiss Counts One, Two, Three, and Four for failure to exhaust the administrative process. The Court has no jurisdiction over Plaintiff's Count Five claim for breach of the NSA because these types of settlement agreements may not be enforced in federal court. *Lindstrom*, 510 F.3d at 1193–94. In short, "Congress did not consent to being sued by federal employees to enforce settlement agreements" concerning Title VII and ADEA discrimination claims. *Id.*

IT IS ORDERED that Defendant's MOTION TO DISMISS AND MEMORANDUM IN SUPPORT (Doc. No. 10) is granted, and Plaintiff's Complaint will be dismissed for lack of jurisdiction by separate order.

_____
SENIOR UNITED STATES DISTRICT JUDGE